UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY M. BIANCHINI, SR.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security<br><br>Defendant. | No.  2:18-cv-2892-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  ECF Nos. 15 & 20.  Also pending is the court's March 30, 2020 order to show cause why sanctions should not be imposed for the plaintiff's failure to timely file his motion.  ECF No. 13.  For the reasons discussed below, the order to show cause is discharged, plaintiff's motion for summary judgment is denied, and the Commissioner's motion is granted.

I.      Order to Show Cause

On June 20, 2019, the Commissioner filed the administrative record and an answer to the complaint.  ECF Nos. 9 & 10.  Pursuant to the court's scheduling order, plaintiff was required to file a motion for summary judgment and/or remand within 45 days of the date the administrative

record was served or, in this instance, by August 5, 2019.  ECF No. 5 at 2.  After he failed to do so, the court ordered him to show cause why sanctions should not be imposed for failure to timely file a motion for summary judgment.  ECF No. 13.  Plaintiff was also ordered to file his motion for summary judgment no later than April 13, 2020.  *Id*.

In response, plaintiff's counsel attributes the failure to timely file a motion to a calendaring error by recently hired support staff but counsel took ultimate responsibility, and apologized for the failure.  ECF No. 14.   While that response explains the failure, it does not excuse it nor provide good cause for missing the deadline.  *See Hubbard v. Twin Oaks Health and Rehabilitation Center*, 2004 WL 3643820, *1 (E.D. Cal. July 15, 2004) ("[D]efendants provide no showing of good cause, but instead admit that a calendaring error . . . [was] the cause of their oversight of the expert designation deadline.")   Nevertheless, the order to show cause will be discharged without the imposition of sanctions.

II.    Background

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that he had been disabled since March 17, 2015.  Administrative Record ("AR") 169-83.  His applications were denied initially and upon reconsideration.  *Id*. at 94-97, 103-114.  A hearing was subsequently held before administrative law judge ("ALJ") David M. Blume.  *Id*. at 30-55.

On September 25, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id*. at 16-25.  The ALJ made the

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is

following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

2. The claimant has not engaged in substantial gainful activity since March 17, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971, *et seq.*).

   * * *

3. The claimant has the following severe impairments: fracture of the right foot (20 CFR 404.1520(c) and 416.920(c)).

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

   * * *

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: he can frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders/ropes/scaffolds.

   * * *

*/////*

---

appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

6. The claimant is capable of performing past relevant work as a recreational vehicle salesperson and automobile salesperson.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

* * *

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 17, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 18-25.

Plaintiff's request for Appeals Council review was denied on August 24, 2018, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-6.

III.    Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

1    IV.    Analysis

2          Plaintiff's motion raises two arguments.  First, plaintiff argues that the ALJ erred by

3    rejecting the opinion from his treating physician assistant, Ashlee Harrah.  ECF No. 15 at 9-13.

4    Second, he argues that the ALJ improperly rejected his testimony.  *Id*. at 13-15.  The court, for the

5    reasons stated below, finds neither argument persuasive.

6          A.    The ALJ Provided Legally Sufficient Reasons for Rejecting Ms. Harrah's Opinion

7          At the time plaintiff filed her claim, physician assistants were not considered acceptable

8    medical sources within the meaning of the Commissioner's regulations.[2]  20 C.F.R.

9    §§ 404.1513(d)(1), 416.913(d)(1).  Thus, an opinion from a physician assistant is entitled to less

10   deference than an opinion from a treating physician, and the ALJ may discount the opinion from

11   this source if he "gives reasons germane . . . for doing so."  *Molina*, 674 F.3d 1104, 1111 (9th Cir.

12   2012).  Nevertheless, in some instances "it may be appropriate to give more weight to the opinion

13   of a medical source who is not an "acceptable medical source" if he or she has seen the individual

14   more often than the treating source, has provided better supporting evidence and better

15   explanation for the opinion, and the opinion is more consistent with the evidence as a whole" 20

16   C.F.R. §§ 404.1527(f); 416.927(f); *see Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017)

17   (finding that ALJ erred in disregarding opinion of a nurse practitioner who served as claimant's

18   primary medical care provider).

19         Ms. Harrah opined that plaintiff could sit for about six hours in an eight-hour day, stand

20   for at least two hours in an eight-hour day, walk at least two hours in an eight-hour day, and walk

21   approximately four to five blocks without rest or severe pain.  AR 398.  She also found that

22   plaintiff would need to alternate positions at will, elevate his leg to heart level 20 percent of an

23   eight-hour day, and would likely be absent from work about one day a month due to his

24   impairments.  *Id*. at 398-99.  The ALJ afforded Ms. Harrah's opinion little weight, finding that it

25   _____

26         [2]  The Commissioner has amended the regulations regarding evaluation of medical
     evidence for claims filed on or after March 27, 2017.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).
27   Under the new regulations, a licensed physician assistant is an acceptable medical source "for
     impairments within his or her licensed scope of practice."  *See* 20 C.F.R. §§ 404.1502, 416.902.
28   Because plaintiff's applications were filed in 2015, the new regulations do not apply to his claim.

1   was inconsistent with plaintiff's "significant activities of daily living and improvement on

2   medication." *Id*. at 24.

3         The court finds that these reasons are legally sufficient.  Even in the context of treating

4   physicians, an inconsistency between the physician's opinion and the claimant's daily activities

5   may justify discounting his or her opinion.  *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d

6   595, 601-02 (9th Cir. 1999) (holding that inconsistency with daily activities is a specific and

7   legitimate reason to discount a physician's opinion).  As observed by the ALJ, plaintiff's medical

8   records reflect that, despite a continuing need to take medication for pain, plaintiff was able to

9   engage in more activities as his leg impairment improved.

10        Medical records from May 2015, just two months after plaintiff fractured his foot, show

11   that the plaintiff was having "some more pain" after increasing his activity.  AR 330.  That

12   activity was described as walking a significant amount with his CAM boot and building an entire

13   fence with his wife over the course of the prior week.  *Id*. at 330.  In August 2015, plaintiff

14   reported being able to walk comfortably for six hours in regular shoes before getting fatigued.  *Id*.

15   at 293.  He also reported engaging in cleaning and yard work, including working in the other

16   people's yards.  *Id*.  In December 2015, plaintiff reported that he attempted to go back to work the

17   prior month, but he was forced to stop after a few days due to injuring his back.  *Id*. at 359.  A

18   May 2016 treatment record indicates that plaintiff had been working more and had "four weeks of

19   work lined up."  *Id*. at 368.  He also reported experiencing pain while climbing ladders, which he

20   was required to do for work.  *Id*.   In October 2016, plaintiff reported working "hard Landscaping

21   and doing Handyman and Maintenance work."  *Id*. at 377.  In February 2017, he stated that lately

22   he had been working on uneven grounds, which exacerbated his pain.  *Id*. at 382

23        These reported activities, including plaintiff's own statement that he could walk six hours

24   in regular shoes before becoming fatigued, easily support the ALJ's rejection of Ms. Harrah's

25   opinion.  Plaintiff notes, however, that these same records also reflect that plaintiff continued to

26   experience swelling in the right foot and ankle, which he often attributed to his activities.  ECF

27   No. 15 at 10-11.  Plaintiff's observation, while accurate, does not cast doubt on the ALJ's finding.

28   A claimant's RFC is the most that the claimant can do despite his physical and mental limitations.

1   20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  Here, the records discussed above reflect that

2   despite some issues with swelling and intermittent pain, plaintiff was able to walk for a

3   significant period of time and perform manual labor.  As the ALJ concluded, the ability to

4   perform such activities is inconsistent with Ms. Harrah's opinion that plaintiff could only stand

5   and walk for two hours in an eight-hour workday.

6          B.      The ALJ Provided Legally Sufficient Reasons for Rejecting Plaintiff's Testimony

7          Plaintiff also argues that the ALJ improperly rejecting his testimony without providing

8   legally sufficient reasons.  ECF No. 15 at 13-15.

9          Plaintiff testified that he is unable to work primarily due to fracturing his right foot, which

10  he sustained after falling from a tree in March 2015.  AR 36, 40.  Plaintiff estimated that he could

11  frequently lift up to 20 pounds, stand for a total of three to four hours in an eight-hour workday,

12  but only stand at one time for approximately 30-90 minutes.  *Id*. at 40-41, 51.  He reported

13  experiencing constant pain in his foot, which was occasionally severe enough to disrupt his sleep.

14  *Id*. at 40, 47.  He also reported receiving physical therapy, but noted that it provided no relief.  *Id*.

15  at 46-47.

16         The ALJ concluded that plaintiff's statements concerning the intensity, persistence, and

17  limiting effect of his symptoms were not entirely credible.  *Id*. at 23.  In reaching that finding, the

18  ALJ found that plaintiff's allegations were inconsistent with the conservative nature of his

19  treatment.  *Id*.; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (evidence of "conservative

20  treatment" is "sufficient to discount a claimant's testimony regarding severity of an

21  impairment.").  As observed by the ALJ, plaintiff's treatment involved home exercises,

22  swimming, icing, and elevating his leg.  AR 22; *see* AR 285-86, 293, 319, 359.  Although

23  plaintiff was prescribed Norco for pain, he generally described improvement in his level of pain.

24  *Id*. at 318 (September 2015—pain was "minimal to none at this point."), 359 (December 2015—

25  improvement in foot pain), 364 (February 2016—"pain is well controlled" and some days

26  medication is not needed), 371 (July 2016—"Does not take Norco everyday.  Only taking half a

27  tab for severe pain . . . .").

28  /////

1    The ALJ also concluded that plaintiff's allegations were inconsistent with his daily

2    activities, including the performing landscaping and handyman work.  AR 20.  As discussed

3    above, plaintiff's medical records reflect he was able to build a fence; walk a significant amount;

4    and perform landscaping, handyman, and maintenance work.  *Id.* at 293, 330, 337, 368.  Plaintiff

5    contends, however, that the ALJ's reliance on his activities is misplaced, noting that he testified

6    that his work primarily involved sedentary tasks performed on a part-time basis.  *See Tonapetyan*

7    *v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d 947, 959 (9th Cir.2002).  But

8    that testimony is belied by his medical records, which, as discussed above, show that plaintiff

9    reported that he was performing physically demanding activities.  Accordingly, the ALJ

10    reasonably concluded that plaintiff's daily activities were inconsistent with allegations of

11    disabling limitations.  *See Thomas*, 278 F.3d at 956-57 ("Where the evidence is susceptible to

12    more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

13    conclusion must be upheld.").

14   V.    Conclusion

15        Accordingly, it is hereby ORDERED that:

16        1.  The March 30, 2020 order to show cause is discharged, and no sanctions are imposed;

17        2.  Plaintiff's motion for summary judgment is denied;

18        3.  The Commissioner's cross-motion for summary judgment is granted; and

19        4.  The Clerk is directed to enter judgment in the Commissioner's favor and close the

20    case.

21    DATED:  September 28, 2020.

22                                                              EDMUND F. BRENNAN
                                                              UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

8